UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIOVANNI GUADAGNINI,<br><br>    Plaintiff,<br><br>v.<br><br>SAMTRANS, et al.,<br><br>    Defendants. | Case No. 21-cv-02613-AGT<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS; (2) LIFTING GENERAL ORDER 56; AND (3) SETTING INITIAL CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. Nos. 14, 15 |

Giovanni Guadagnini is a disabled California resident who uses a wheelchair for mobility. For the past two years, he has been a frequent user of the public bus system in the City of Pacifica, which is operated by San Mateo Transit District ("SamTrans"). In April 2021, after encountering alleged access barriers at multiple bus stops within that bus route, Guadagnini brought this disability discrimination suit against SamTrans and Pacifica, seeking injunctive relief and damages pursuant to Title II of the Americans with Disabilities Act and California's Unruh Civil Rights Act. Guadagnini's claims are based on defendants' alleged failure to comply with ADA regulations that require public entities to make newly altered facilities (here, bus stops) readily accessible to individuals who use wheelchairs. Guadagnini alleges that he is "currently deterred from using [seven bus stops in particular], as well as many others, because of his knowledge of the existing [access] barriers and his uncertainty about the existence of yet other barriers." Compl. ¶ 74. He further alleges that SamTrans and Pacifica jointly operate and control all bus stops at issue. *Id.* ¶ 6.

SamTrans and Pacifica have moved to dismiss pursuant to Rules 12(b)(6) and 12(b)(7). Dkts. 14, 15. For the reasons below, the motions to dismiss for failure to state a claim are granted in part and denied in part, and the motions to dismiss for failure to join a necessary party are denied.

### 1. Rule 12(b)(6)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II, a plaintiff must show that "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) this exclusion, denial, or discrimination was by reason of his disability." *Cohen v. City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014). "An individual is excluded from participation in or denied the benefits of a public program [or service] if 'a public entity's facilities are inaccessible to or unusable by individuals with disabilities.'" *Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982, 985 (9th Cir. 2014) (quoting 28 C.F.R. § 35.149).

In defining accessibility, Title II's implementing regulations differentiate between "existing" facilities, i.e., facilities constructed prior to the ADA's January 26, 1992 effective date, and "newly constructed or altered" facilities, i.e., facilities constructed or altered after January 26, 1992. With respect to existing facilities, "a public entity need only provide program access, by 'operat[ing] each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities.'" *Id.* at 986 (quoting 28 C.F.R. § 35.150(a)). The standard for newly constructed or altered facilities is more stringent: each facility constructed after January 26, 1992 must be made "readily accessible," and each facility altered after that date must be made readily accessible "to the maximum extent feasible." 28 C.F.R. § 35.151(a)–(b). The regulations also impose specific accessibility obligations on public entities which make alterations to existing public transit facilities:

> When a public entity alters an existing facility or a part of an existing facility used in providing designated public transportation services[1] in a way that affects or could affect the usability of the facility or part

---

[1] In this context, "designated public transportation" means "transportation (other than public school transportation) by bus . . . that provides the general public with general or special service (including charter service) on a regular and continuing basis." 42 U.S.C. § 12141(2).

2

> of the facility, the entity shall make the alterations (or ensure that the alterations are made) in such a manner, *to the maximum extent feasible*, that the altered portions of the facility are *readily accessible* to and usable by individuals with disabilities, including individuals who use wheelchairs, upon the completion of such alterations.

49 C.F.R. § 37.43(a) (emphasis added); *see* 42 U.S.C. § 12147(a).

Here, Guadagnini has adequately alleged that defendants are in violation of their statutory accessibility obligations with respect to six of the seven bus stops at issue. Guadagnini specifically alleges post-ADA renovations for those six stops, *see* Compl. ¶ 31 (Southbound at Palmetto Avenue & Monterey Road); ¶ 38 (Northbound at Palmetto Avenue & Manor Drive); ¶ 50 (Southbound at Palmetto Avenue & Westline Drive); ¶ 56 (Southbound at 1450 Terra Nova Boulevard; Northbound at Highway 1 & Reina Del Mar Avenue; and Terra Nova Boulevard & Fassler Avenue), and he describes the alleged access barriers that make the stops dangerous and inaccessible to him and other wheelchair users, *see*, *e.g.*, *id.* ¶¶ 27, 53 (lack of level landing for bus to deploy its wheelchair lift and obstructed path of travel); ¶¶ 13, 31 ("newly installed trash receptacle on the sidewalk at the [Palmetto and Monterey] bus stop blocked the required clear space on the sidewalk," making the bus stop and path of travel inaccessible by wheelchair); ¶ 45 (lack of accessible paths of travel to/from bus stops); ¶¶ 50–51 (lack of red painted curb and "no parking" signage to prevent parked cars from blocking access to bus stops, lack of edge protection on sidewalk), in violation of the ADA. The Court is not persuaded by defendants' conclusory arguments that the availability of SamTrans's paratransit service obviates their statutory obligations under the ADA to ensure that newly altered bus stops are readily accessible. Defendants' Rule 12(b)(6) motions to dismiss are denied as to the above six bus stops.

As to the seventh challenged bus stop—Southbound Rockaway Beach—Guadagnini alleges that a "visual inspection [] reveals that it has been renovated, and is still not compliant with the requirements of the [ADA] due to the lack of a level landing, steep slope, and lack of an accessible path of travel." *Id.* ¶ 33. Pacifica argues, and the Court agrees, that Guadagnini has not established an ADA violation with respect to the Rockaway stop because he has not alleged that it "was altered since passage of the ADA (and thus subject to heightened accessibility standards)," and he cannot otherwise show a lack of program access to the SamTrans bus system in its entirety based on one

3

allegedly inaccessible bus stop. Dkt. 14 at 11 (citing *Kirola v. City & Cty. of San Francisco*, 860 F.3d 1164, 1183–84 (9th Cir. 2017)). Defendants' motions to dismiss are therefore granted as to the Rockaway bus stop. To the extent Guadagnini can allege facts showing a post-ADA renovation to the Rockaway stop, he has leave to amend to do so.

Finally, Guadagnini has stated a claim against defendants for violation of California's Unruh Civil Rights Act because "a violation of the ADA constitutes a violation of the Unruh Act." *Cohen*, 754 F.3d at 701 (citing Cal. Civ. Code § 51(f)). Guadagnini's Unruh claim may therefore proceed as derivative of his Title II claim.

### 2. Rule 12(b)(7)

SamTrans and Pacifica also move to dismiss pursuant to Rule 12(b)(7) for failure to join the State of California and its executive agency, the California Department of Transportation ("Caltrans"), as parties to this action. They argue that Caltrans are California are necessary to enforce any requested injunctive relief that may be granted with respect to the challenged bus stop located on Highway 1 (*see* Compl. ¶¶ 56, 76, Prayer for Relief) because Caltrans owns and controls Highway 1. *See* Cal. Sts. & High. Code § 90 ("[Caltrans] shall have full possession and control of all state highways and all property and rights in property acquired for state highway purposes."); *see also id.* § 91 ("[Caltrans] shall improve and maintain the state highways").

A Rule 12(b)(7) motion to dismiss for failure to join a party under Rule 19 poses "three successive inquiries": (1) is the absent party necessary (i.e., required to be joined if feasible) under Rule 19(a); (2) if so, is ordering joinder feasible; and (3) if joinder is not feasible, is the absent party "indispensable" such that the case should be dismissed. *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005). Relevant here, a party may be necessary under Rule 19(a) "if, in [their] absence, the court cannot accord complete relief among existing parties," or if they have "an interest in the action and resolving the action in [their] absence may as a practical matter impair or impede [their] ability to protect that interest." *Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012). Given the applicable California code sections cited above, the Court agrees that Caltrans and California may be necessary to enforce certain injunctive relief that might be granted in connection with the Highway 1 bus stop(s). But neither defendant has argued that

joinder is unfeasible; to the contrary, as Pacifica acknowledges, "no party contests the feasibility of joining Caltrans and the State of California to this suit." Dkt. 22 at 2; *see also* Dkt. 20 at 10. The Rule 19 inquiry therefore ends at step two, and "dismissal is not warranted because joinder of these parties is feasible." *Pavoni v. Chrysler Grp. LLC*, 2012 WL 12883905, at *2 (C.D. Cal. Nov. 15, 2012). Defendants' motions to dismiss under Rule 12(b)(7) are thus denied. However, to the extent Guadagnini intends to seek injunctive relief in connection with any bus stop(s) located on Highway 1, Caltrans and California must be joined as parties to this lawsuit. *See* Fed. R. Civ. P. 19(a)(2) ("If a person has not been joined as required, the court must order that the person be made a party.").[2] The Court will revisit this issue with the benefit of more discovery once the pleadings are settled.

\* \* \*

Any amended complaint must be filed within 14 days of this order and defendants must answer or otherwise respond to any amended complaint within 14 days of its filing.

At this juncture, the Court finds that suspending the application of General Order 56 is warranted in this case. All General Order 56 deadlines (*see* dkts. 4, 13) are hereby vacated and discovery may proceed immediately. An initial case management conference is set for **November 12, 2021**, with a joint case management statement due on **November 5, 2021**.[3]

**IT IS SO ORDERED.**

Dated: October 1, 2021

ALEX G. TSE
United States Magistrate Judge

---

[2] The fact that Guadagnini has not asserted a claim against, and is not seeking affirmative relief from, Caltrans or California does not preclude the Court from ordering their joinder under Rule 19. As the Ninth Circuit has explained, a Rule 19 party may be joined "for the sole purpose of making it possible to accord complete relief between those who are already parties, even though no present party asserts a grievance against such [party]." *E.E.O.C.*, 400 F.3d at 781.

[3] Guadagnini's request for an order setting a joint site inspection (dkt. 26) and his request for a "limited" case management conference (dkt. 28) are denied as moot.